*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JESSIE LEE HOBART,

        Defendant-Appellant.

UNPUBLISHED
August 15, 2025
9:21 AM

No. 370089
Livingston Circuit Court
LC No. 2022-027378-FC

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of carjacking, MCL 750.529a; assault with a dangerous weapon (felonious assault), MCL 750.82; third-degree fleeing and eluding, MCL 257.602a(3)(a); and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced him as a third-offense habitual offender, MCL 769.12, to concurrent prison terms of 14½ to 30 years for carjacking, 3 to 8 years for felonious assault, 4 to 10 years for fleeing and eluding, and 2 to 4 years for resisting or obstructing. On appeal, defendant challenges the scoring of the sentencing guidelines and the proportionality of his sentence for carjacking. We affirm.

## I. BACKGROUND

This case arises from a series of events that occurred on the evening of February 1, 2022, at a car dealership in Livingston County. Max Lenhard, a retired police officer, and his wife, Kathleen Gannon, arrived at the dealership around 8:00 p.m. to retrieve Lenhard's serviced truck. The dealership was closed at that hour, and it was dark outside.

As they entered the parking lot, Lenhard remotely started his truck, and the two waited in Gannon's vehicle for the truck to warm up. While they waited, a Jeep entered the lot and parked nearby. When Lenhard got out to leave in his truck, defendant approached and began asking questions about the vehicle. Lenhard attempted to close his door, but defendant lunged forward and blocked it. A struggle followed, during which defendant bit Lenhard's hand, punched him in the face, and caused Lenhard's phone to fall to the ground. After briefly separating, defendant grabbed the phone, pushed Lenhard away, and jumped into Lenhard's running truck. As Lenhard reached in to stop him, defendant brandished a broken wooden dowel—previously attached to a

-1-

flag—and attempted to stab Lenhard in the face. Lenhard retreated, and defendant chased him to the passenger side of the truck before returning to the driver's seat and locking the door.

Gannon called 911 from her own vehicle and reported the incident as it unfolded. She was still on the line when Lenhard entered her vehicle and began to follow defendant, who was speeding through the parking lot in Lenhard's truck. A marked police vehicle arrived with lights and sirens activated as defendant exited the parking lot. Defendant swerved around the police vehicle and drove over grass, a sidewalk, and a curb to reach the road at high speed. Lenhard then used Gannon's vehicle to ram his own truck, disabling it.

Despite the collision, defendant continued pressing the accelerator and physically resisted the responding officer, Livingston County Sheriff's Sergeant Ryan Vorhies. When the sergeant attempted to arrest him, defendant fled toward the police vehicle and tried to enter the driver's seat. Sergeant Vorhies deployed his taser twice, and Lenhard helped him subdue defendant. Sergeant Vorhies recovered Lenhard's phone from defendant's pocket. Defendant was subsequently charged with carjacking, felonious assault, third-degree fleeing and eluding, and resisting or obstructing a police officer.

At trial, defendant testified in his own defense. He claimed that he had previously worked at the car dealership and, when he saw a running truck with no visible occupants in the lot, entered to investigate whether someone needed help or a crime was in progress. According to defendant, as he attempted to ask Lenhard about the truck's ownership, Lenhard pushed him, and a struggle ensued. Defendant testified that he entered the truck intending only to prevent Lenhard from leaving before police arrived. He attributed his subsequent conduct after Lenhard rammed the truck to disorientation and shock.

The jury was not persuaded and convicted defendant as charged. The trial court sentenced him as described above, and this appeal followed.

II. ANALYSIS

A. SCORING CHALLENGES

On appeal, defendant challenges the scoring of Offense Variables (OVs) 13 and 17. We conclude that both claims are waived.

"Waiver is the intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999) (cleaned up). A defendant who expressly approves the trial court's scoring of the guidelines may not later seek appellate review of that decision, "for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation omitted); see also *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver.").

At sentencing, defense counsel affirmatively stated that "the guidelines do appear to be accurate" and that defendant had no additions, deletions, or corrections to the presentence investigation report. That express acknowledgment waived any challenge to the scoring of the guidelines.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that trial counsel was ineffective for failing to object to the scoring of OV 13.[1]

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review factual findings for clear error and constitutional questions de novo. *Id*. Defendant did not preserve his ineffective-assistance claim by moving the trial court for a new trial or *Ginther*[2] hearing, *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), or moving this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Our review is therefore limited to errors apparent from the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

Both the Michigan and United States Constitutions guarantee criminal defendants the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488. To obtain relief, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Because "[c]ounsel is not ineffective for declining to raise a futile objection," *People v Muniz*, 343 Mich App 437, 449; 997 NW2d 325 (2022), we must determine whether the trial court erred in scoring OV 13 and, if so, whether any error affected the outcome of the proceedings.

The trial court assessed 25 points for OV 13, which is appropriate when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Defendant was convicted of three such offenses: carjacking, felonious assault, and resisting or obstructing a police officer.

Defendant asserts that those offenses arose from a single criminal act and therefore cannot establish a "pattern" under *People v Carll*, 322 Mich App 690; 915 NW2d 387 (2018). But the defendant in *Carll* was convicted of four felonies resulting from a single act—running a stop sign—that resulted in a death and multiple injuries. The Court held that "a single felonious act cannot constitute a pattern" but distinguished cases involving distinct criminal acts, which may be counted separately for the purposes of scoring OV 13. *Id*. at 704-706.

Here, defendant's conduct involved three distinct acts: (1) attempting to stab Lenhard with a sharp wooden dowel (felonious assault); (2) taking and driving away in Lenhard's truck (carjacking); and (3) resisting a police officer during arrest (resisting or obstructing). Although those acts occurred close in time, they involved different conduct, legal elements, and victims. They were distinct both in nature and effect, and therefore qualify as separate crimes for purposes

---

[1] Defendant did not raise an ineffective-assistance claim attendant to his challenge to the scoring of OV 17.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

of OV 13. See, e.g., *People v Gibbs*, 299 Mich App 473, 497-488; 830 NW2d 821 (2013) (affirming a 25-point assessment for OV 13 based on three robberies committed during a single visit to a pawn shop because the defendant "committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity").

Because the trial court did not err in scoring OV 13, any objection would have been futile, and counsel's failure to object does not constitute deficient performance. See *Muniz*, 343 Mich App at 449; *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. PROPORTIONALITY OF SENTENCE

Defendant also challenges the proportionality of his within-guidelines sentence for carjacking. We find no abuse of discretion.

We review challenges to the proportionality of a sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7, quoting *Steanhouse*, 500 Mich at 459-460.

Although the sentencing guidelines are advisory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Trial courts must consult the guidelines when imposing a sentence. *Id*. "[A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990), abrogation in part on other grounds recognized by *Steanhouse*, 500 Mich at 477. Under the sentencing guidelines, the trial court is required to score both offense and prior record variables to determine the appropriate sentence range. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Offense variables consider the nature and severity of the sentencing offense, and prior record variables consider the defendant's criminal history. *Id*. at 263-264. "Therefore, the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history." *Id*. at 264.

In making a proportionality assessment, a trial court must consider the nature of the offense and the background of the offender. *Milbourn*, 435 Mich at 651. Trial courts may consider a variety of factors in assessing the proportionality of a sentence including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (citation omitted).]

Under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017) (citation omitted).

Here, defendant's minimum sentence of 14½ years (174 months) falls well within the applicable guidelines range of 135 to 337 months. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Ventour*, ___ Mich App at ___; slip op at 7 (citation omitted). Defendant's sentence is therefore presumptively proportionate, and "defendant bears the burden of demonstrating that his within-guidelines sentence is unreasonable" by "presenting unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. at ___; slip op at 7-8 (cleaned up).

Defendant identifies no unusual circumstances. Instead, he claims that his sentence is disproportionate because of the trial court's purported error in scoring OVs 13 and 17. He also submits that the trial court improperly relied on juvenile adjudications from 2006 in sentencing him. Both contentions lack merit. As noted earlier in this opinion, defendant waived any challenge to the scoring of the guidelines, and he cannot circumvent that waiver by presenting the issue as a challenge to the proportionality of his sentence. Moreover, the trial court did not reference defendant's 2006 juvenile adjudications in imposing his sentence. The trial court considered the seriousness of the offense, defendant's youth and potential for rehabilitation, and the need to protect the public. It acknowledged initially contemplating a 19½-year sentence but ultimately imposed a sentence of 14½ years in light of defendant's rehabilitative potential. While the trial court referenced the habitual offender enhancement, it did not cite defendant's criminal history as a basis for the sentence.

Given the violent nature of the offense—a carjacking involving a dangerous weapon, a high-speed pursuit, and resistance to law enforcement—the sentence was proportionate to the offense and the offender. It fell near the lower end of the guidelines and reflected the court's consideration of both aggravating and mitigating factors. Defendant has not demonstrated any unusual circumstances sufficient to rebut the presumption of proportionality and is therefore not entitled to resentencing.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman